# IN THE SUPERIOR COURT OF GUAM

**PEOPLE OF GUAM,**

                    Plaintiff,

vs.

**EDWARD ACE SICAT aka KIM,**

DOB: 9/06/1992

                    Defendant.

CRIMINAL CASE NO. CF0487-20

**DECISION AND ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL**

This matter came before the Honorable Dana A. Gutierrez on December 2, 2024 for a continued Competency Hearing for Defendant Edward Ace Sicat ("Sicat"). Present at the hearing was Sicat with his counsel, Attorney Michael F. Phillips, and Assistant Attorney General Christine S. Tenorio on behalf of the People of Guam ("People").[1]

Upon review of the evidence, the arguments of counsel, and applicable law, the Court finds that Sicat is competent to be proceeded against at trial.

## BACKGROUND

This case has been before the Court since September 2020, and numerous trial dates have been scheduled and vacated. *See* Decision and Order Re: Motion to Continue at 1-5 (July 20, 2023). On October 4, 2023, Sicat's counsel filed a Motion in Limine for Hearing on Defendant's Competency to be Proceeded Against, which raised Sicat's apparent "inability to meaningfully

---

[1] Also present was Public Defender Stephen P. Hattori on behalf of Sicat and Tagalog interpreter, Brianyx Crisologo.

understand the nature of the proceedings, assist and cooperate with his counsel, follow the evidence, or participate in his defense." *Id.* at 6, *see also* Decl. Michael F. Phillips at 2 (Oct. 4, 2023) ("The Defendant is completely unable to assist or cooperate with defense counsel. We are not able to have a productive conversation with the Defendant about anything involving the facts of his case or upcoming trials.").

The Court ordered Sicat to undergo a forensic evaluation, and for the examiner to provide the following: (1) an opinion as to the defendant's competency to be proceeded against, together with the reasons and basis for the opinion, (2) an opinion as to the defendant's competency to be sentenced, together with the reasons and basis for the opinion, and (3) an opinion as to whether the defendant lacked substantial capacity to know or understand what he was doing, or to know or understand that his conduct was wrongful or to control his actions, or to the extent to which, as a consequence of mental illness, disease, or defect, the defendant did or did not have a state of mind relevant to any issue in the trial of action. Order for Forensic Evaluation at 2 (Oct. 5, 2023).[2]

On November 7, 2023, Dr. Juan Rapadas, a Clinical Psychologist with the Judiciary of Guam's Client Services and Family Counseling Division ("CSFC"), performed a forensic evaluation on Sicat. Dr. Rapadas's written report ("Rapadas Report") concluded that Sicat "does not have a severe mental disorder that would directly cause him to lack substantial mental capacity to know or understand what he was doing, to know or understand that his conduct was wrongful, or to control his actions, under any circumstances in his past and present behaviors." Rapadas

---

[2] Separately, at the request of Sicat's counsel, the Court ordered that a Tagalog interpreter be present to assist Sicat at the forensic evaluation. Although this case has been pending for several years, Sicat did not raise the issue of his English proficiency until fall of 2023. Sicat's counsel has stated that although Sicat can speak some English, he needs assistance understanding legal terminology and concepts. The People have not objected to Sicat's use of an interpreter. *See* Decision and Order Re: Competency Issues and Second Forensic Evaluation at 3 (July 10, 2024).

2

Report at 6. Rapadas also concluded that Sicat was competent to be proceeded against, as he "seem[s] to possess the ability to consult [with his attorney] with a good degree of rational understanding" and "seems capable of testifying appropriately." *Id.* at 5.

On March 14, 2024, the Court held a Competency Hearing and received testimony from Dr. Rapadas. During the hearing, Dr. Rapadas conceded that he did not review Sicat's full medical history prior to or during the forensic evaluation. Min. Entry at 2:54:01 PM (Mar. 14, 2024). Specifically, he de did not account for whether Sicat's mental conditions, and/or his use of Bromazepam, may render him "drowsy" or "frozen" at trial, and thus unable to assist in his defense. *See* Decision and Order at 9 (July 10, 2024).

Following the competency hearing, the Court issued a Decision and Order Re: Competency Issues and Second Forensic Evaluation on July 10, 2024. The Court ruled that Sicat failed to meet his burden in providing evidence that he lacked substantial capacity at the time of the alleged offenses, but given Dr. Rapadas' incomplete review of Sicat's medical history, that further information was necessary before making a determination of Sicat's competency to stand trial. *See id.* at 7-9.

Thus, the Court ordered a second forensic evaluation for Sicat by another examiner who "shall (1) evaluate the medical history that Sicat provides, if any and (2) evaluate Sicat's current medication regimen, if any. The examiner shall thereafter produce a written report which addresses whether Sicat's medical history, and/or his current medication regimen, renders him incompetent to be proceeded against . . . ." *Id.* at 9. In other words, whether Sicat is unable, as a result of mental illness, disease, or defect, to (1) understand the nature of the proceedings, (2) assist and cooperate with counsel, (3) follow the evidence, and/or (4) to participate in his defense. *Id.* Furthermore, the

3

Court ordered Sicat to bring any documentation of his medical and medication history that is relevant to the inquiry to his second forensic evaluation. *Id.*

### A.    Dr. Leitheiser's Report

Sicat underwent a second forensic evaluation with Dr. Andrea M.S. Leitheiser ("Dr. Leitheiser"), a Licensed Clinical Psychologist, on August 26, 2024.[3]

On September 7, 2024, Dr. Leitheiser produced her written report (hereafter, "Leitheiser Report"), which provided information about her forensic evaluation of Sicat. During her evaluation, Dr. Leitheiser observed that "[Sicat] was oriented to person, place, time, location, and context of evaluation," and that his "[j]udgment, reliability and insight were observed to be within average limits." Leitheiser Report at 10.

Dr. Leitheiser administered the Minnesota Multiphasic Personality Inventory Second Edition test ("MMPI-2"). However, she concluded that the "resulting MMPI-2 profile is not likely to be a valid indication of his personality and symptoms" because Sicat "responded to the MMPI-2 items in an exaggerated manner, endorsing a wide variety of symptoms and attitudes." *Id.* at 12.

As part of his evaluation, Sicat also underwent the Wechsler Adult Intelligence Scales Fourth Edition test ("WAIS-IV"). His results showed that his "general cognitive ability is within the average range of intellectual functioning." *Id.* at 13. Additionally, his verbal reasoning abilities, perceptual reasoning and processing speed are all within average range, and his working memory is within the low average range. *Id.* at 14.

---

[3] Brianyx Crisologo served as Sicat's interpreter during his examination. Leitheiser Report at 1 (Sept. 7, 2024).

Dr. Leitheiser also conducted the McGarry Competency to Stand Trial Assessment Instrument ("CAI"), a structured interview designed to evaluate thirteen key functions relevant to a defendant's competency to stand trial. *Id.* at 16. This assessment examines a defendant's ability to understand legal proceedings, communicate with counsel, and participate in his defense. *Id.*

Following the assessment, Dr. Leitheiser concluded that Sicat possesses the ability to appraise the legal defenses available to him. *Id.* at 18. She further determined that he is expected to be cooperative with his attorney and is "able to offer a legal strategy with consultation with a legal professional." *Id.* She found that he is able to appraise the roles of his attorney, the public defender, prosecutor, judge and jury. *Id.* at 16. In addition, he understands the procedures of the court such as when to talk and what it means when a judge sustains an objection. *Id.* Also, Dr. Leitheiser stated that Sicat demonstrated that he appreciates the charges against him, and the penalties he faces. *Id.*

Based on her observations and testing, Dr. Leitheiser also concluded that Sicat suffers from an anxiety disorder, including symptoms consistent with post-traumatic stress disorder ("PTSD"). *Id.* at 21. These symptoms include "a freeze response, panic, and issues with self-worth including eating disorders." *Id.*

Although Dr. Leitheiser noted that Sicat experiences difficulty communicating during courtroom proceedings due to a "fight or flight system activation" when he perceives himself to be "in trouble," she nonetheless determined that he retains the ability to "testify relevantly." *Id.* at 18-19. She explained that while Sicat may exhibit signs of anxiety, appropriate medical and mental health support can help him effectively engage in his defense. *Id.* at 19.

Sicat was previously diagnosed with an anxiety disorder and had been taking anxiety medication, but there was "confusion that the medication prescribed [to Sicat] would likely hinder

court participation." *Id.* at 9. Dr. Leitheiser explained however, that medication is not meant to hinder participation—"psychotropic medication is used to alleviate panic symptoms so that a person can be fully present and participate in their current situation, in this context, for the defendant to assist in his defense." *Id.* She stated that proper medication management is likely to enhance his ability to participate in court, not hinder it. *Id.*

Ultimately Dr. Leitheiser concluded that "[i]t is the opinion of this provider that Defendant is competent to stand trial from a legal perspective." *Id.*

### B.     Competency Hearing

On December 2, 2024, the Court held a continued Competency Hearing and received testimony from Dr. Leitheiser. On direct examination by the People, Dr. Leitheiser reaffirmed her conclusions from her forensic evaluation. Min. Entry at 1:40:42 PM (Dec. 2, 2024). ("Testing using standardized measures both for executive functions and competency, I am sure that he was competent to stand trial, and concur with the original [Dr. Rapadas] report."). Dr. Leitheiser re-emphasized that medication is "meant to be therapeutic, to assist, not distract," and that "medication management with a psychiatrist [can] maximize good effects while decreasing side effects." *Id.* at 1:41:40 PM-1:42:14 PM.

On cross-examination, Sicat's counsel raised issues of Sicat "freezing up" in court as a symptom of anxiety, as well as issues with Sicat's medication causing him to be drowsy. *Id.* at 1:51:09 PM-2:13:58 PM. On re-direct, Dr. Leitheiser clarified that Sicat's "freezing up" response did not render him completely "catatonic." *Id.* at 2:30:50 PM. Additionally, Dr. Leithiser testified that certain accommodations such as taking breaks, as well as counsel educating his client about court procedures, can mitigate such side-effects. *Id.* at 2:46:31 PM-2:49:51 PM. At the end of the

hearing, both parties requested to provide briefing to the Court and the Court granted the parties' request. *Id.* at 3:04:02 PM-3:12:55 PM.

On December 16, 2024, Sicat filed Defendant's Competency Brief and Memorandum of Points and Authorities in Support Thereof. In his brief, Sicat "requests the Court accommodate his PTSD and along with the requirements of the Americans with Disabilities Act ("ADA"), ensure the establishment of safeguards to reasonably accommodate Defendant." Def.'s Competency Br. at 2. Without such safeguards, Defendant does not believe he can be proceeded against. *Id.*

On December 30, 2024, the People submitted People's Brief Re: Defendant's Competency to Stand Trial. The People "do not oppose the imposition of safeguards and accommodations so that Defendant may assist in his defense." People's Br. at 2. "However, the People want to make clear that, even without these safeguards, the Defendant's condition alone does not render him incompetent to stand trial." *Id.*

The Court gave Sicat the opportunity to file a reply by January 6, 2025; however, no reply was filed. *See* Min. Entry at 3:12:55 PM (Dec. 2, 2024). The Court then took the matter under advisement on January 16, 2025.

## DISCUSSION

"A defendant is incompetent to be proceeded against in a criminal action if, as a result of mental illness, disease, or defect, he is unable (1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense. 9 GCA § 7.37(a)(1)-(4). In general, the "test for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings

7

against him." *People v. Guerrero*, 2001 Guam 19 ¶ 33 (quoting *Boat v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985)); *see Dusky v. United States*, 362 U.S. 400, 402 (1960).

### A. The Side Effects of Sicat's Medication Do Not Render Him Incompetent to Stand Trial

Sicat appeared mentally sound at both forensic evaluations. During his evaluation with Dr. Leitheiser, he "accurately identified the nature and reason for their evaluation, day of the week, time of day, date of the week." Leitheiser Report at 10. He was "oriented to person, place, time, location, and context of evaluation." *Id.* Sicat also scored within average range on his assessments concerning his cognitive abilities, language skills, memory, and attention. *Id.* at 10-20.

Sicat also demonstrates a clear understanding of the criminal proceedings against him. *See id.* at 16. His responses in the CAI test indicate that he is aware of the roles and responsibilities of various participants, the structure of court procedures, the legal process he is undergoing, and the nature of the charges filed against him. *Id.* Additionally, he understands the range of penalties he could potentially face if convicted, suggesting that he is capable of making informed decisions regarding his defense strategy. *Id.*

Throughout the proceedings, Sicat has consistently maintained his innocence. His legal strategy is centered on demonstrating that the allegations against him are false. *Id.* He understands that if a witness is testifying against him, and he sees that the witness is lying, that he should, "let [his] attorney know." *Id.* His capacity to recognize and relay pertinent details demonstrates that he is engaged with his case and can participate meaningfully in his defense.

While Sicat's mental state does not prevent him from understanding the nature of the proceedings or from assisting in his defense, Sicat's attorney expressed concern that Sicat's

medication for his PTSD diagnosis and anxiety may interfere with his ability to assist in his defense. Def.'s Competency Br. at 1.

However, the administration of psychotropic medication alone is not sufficient to render a defendant incompetent to stand trial. *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992)("A bare allegation of the level of psychotropic drugs administered . . . is insufficient to meet this evidentiary threshold."). A defendant "must present evidence demonstrating that the dosage given to him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him." *Id.* at 1439.

Critically, "drowsiness" as a side effect to medication is not sufficient to render a defendant incapable of standing trial. *See Woods v. McBride,* 430 F.3d 813, 820 (7th Cir. 2005)(holding that drowsiness as a side effect of psychotropic drugs did not interfere with Defendant's ability to assist his counsel as to make him incompetent); *see also Petrena v. State*, 914 So.2d 999, 1001 (Fla. 1st DCA 2005)(affirming conviction and finding evidence insufficient to establish that defendant was mentally incompetent to stand trial, based, in part, on medical testimony that defendant's anti-anxiety medication would not cause defendant to be unable to assist counsel).

In this matter, Sicat reported that his anti-anxiety medication "was very effective" but "left him drowsy." Leitheiser Report at 8. However, Sicat made no showing or argument that the "drowsiness" was so severe as to affect his ability to cooperate with his attorney or assist with his defense. Notably, such complaints of drowsiness, without demonstrable impairment to a defendant's ability to assist his counsel, do not meet the legal standard for incompetency. *See Woods,* 430 F.3d at 820; *Petrena,* 914 So.2d at 1001.

Moreover, Dr. Leitheiser repeatedly stated in both her report and testimony during the competency hearing that medication is intended to alleviate panic symptoms, thereby enhancing,

9

rather than hindering, a defendant's ability to participate in legal proceedings. *Id.* With proper medication management, Sicat's anti-anxiety medication should facilitate his ability to assist in his defense, not obstruct it.[4] Therefore, any alleged side effects of Sicat's medication do not provide a sufficient basis for deeming him incompetent to stand trial.

**B.    Although Sicat Is Competent to Stand Trial, the Court May Allow Reasonable Accommodations**

The Court emphasizes that, as reflected in Dr. Leitheiser's Report, even without the use of anti-anxiety medication, Sicat is competent and can be proceeded against at trial.

Courts have repeatedly held that the mere presence of mental illness does not mean that the defendant is incompetent—the mental illness or disability must be so debilitating that the defendant is unable to consult with his lawyer and does not have a rational and factual understanding of the proceedings. *See State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020)(trial court acted within its discretion in denying defendant's motions for evaluation on her competency to stand trial, despite defendant's mental health diagnoses of generalized anxiety disorder, post-traumatic stress disorder, and major depressive disorder, because defendant could comprehend the proceedings against her); *U.S. v. Patterson*, 713 F.3d 1237, 1242-44 (10th Cir. 2013) (Defendant's Attention Deficit Disorder did not require court to order competency hearing where defendant appeared responsive knowledgeable and understanding of what was happening); *State v. Adkins*, 2021 WL 929924, at 10 (Ohio Ct. App. Mar. 4, 2021)(finding that defendant met standard for competency to stand trial despite history of bipolar disorder, PTSD, anxiety, and depression).

---

[4] Furthermore, the Court does not compel Sicat to take medication. As such, it is his responsibility to manage any medication he voluntarily takes to ensure it best supports him while he is on trial.

Again, Sicat has not demonstrated that his anxiety or PTSD symptoms is so debilitating as to affect his ability to understand the proceedings or consult with his lawyer. As Dr. Leitheiser testified, Sicat does not become "catatonic." Min. Entry at 2:30:50 PM (Dec. 2, 2024). Sicat's "mental health symptoms does not compromise his executive functioning" and he was able to comprehend the proceedings and demonstrate clear cognition and verbal capabilities. Leitheiser Report at 1, 10 and 13. Therefore, Sicat's mental health diagnosis does not render him incompetent to stand trial.

Nevertheless, Sicat requests that the Court provide him with reasonable accommodations in order for him to stand trial and "maintains that without sufficient safeguards and accommodations, [he] may not be proceeded against." Def.'s Competency Br. at 2. As noted above, Sicat's condition alone does not render him incompetent to stand trial. Therefore, the Court rejects this assertion and emphasizes that even without accommodation, Sicat is competent to stand trial. *See Lang,* 305 Neb. 726; *McBride,* 430 F.3d at 820. Further, Sicat has failed to identify what accommodation, if any, he is seeking to assist in his fuller participation in the trial process.

However, the People have agreed to allow reasonable accommodation. People's Br. at 2. Although as noted above, it is Sicat's burden to demonstrate that a reasonable accommodation is needed, the Court does not oppose allowing possible reasonable accommodation, if any, such as those suggested by Dr. Leitheiser (i.e. taking short breaks during panic attacks). The Court shall set a hearing to discuss potential reasonable accommodation, if any, and set this matter for trial.

## CONCLUSION

Previously, the Court found that Sicat did not lack substantial capacity at the time of his alleged offenses and may be proceeded against at trial. *See* Decision and Order at 9 (July 10, 2024). For the reasons stated above, the Court finds that Sicat is competent to stand trial and possesses

11

the mental competency "(1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense." *See* 9 G.C.A. § 7.37(a)(1)-(4). As a result, the Court shall set this matter for trial.

The Court hereby **ORDERS** that a Status Hearing be held on **April 11, 2025 at 9:00 A.M.** to discuss Sicat's request for reasonable accommodation and to set this matter for trial.

**SO ORDERED** this **14ᵗʰ day of March, 2025.**

**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
Copy of the original was e mailed to
AG, PDSC,
Phillips & Borallo
Date 3/14/25 Time. 2:59pm
Albert Caldco

Deputy clerk, Superior Court of Guam